.(13 Misc. Rep. 734.)

## In re HENRY.

(Supreme Court, Special Term, Kings County. August, 1895.)

1. HABEAS CORPUS—EVIDENCE BEFORE COMMITTING MAGISTRATE.
   Under Code Cr. Proc. § 208, providing that a magistrate can commit a person to answer for a crime only when "it appears * * * that a crime has been committed, and that there is sufficient cause to believe the defendant guilty thereof," some evidence of defendant's guilt is necessary to give the magistrate jurisdiction; and therefore, on habeas corpus, the court may go behind the commitment, and ascertain whether there was any evidence before the committing magistrate which connected defendant with the crime.

**2. SAME—SUFFICIENCY OF EVIDENCE.**

On habeas corpus to procure the discharge of relator, who was committed on a charge of murder, the evidence given before the committing magistrate showed that relator's father had been murdered while alone in his house; that relator, who lived with his father, had no occupation, and was addicted to drink, and, a few days before the father's death, relator absented himself from home, and endeavored to have his father declared incompetent to manage his own affairs; that, early in the morning on the day of the father's death, relator was seen leaving the house hurriedly; that relator made inconsistent statements as to his doings between the time he left home and the day of his father's death; and that there were human blood stains on his shirt sleeve. *Held,* that the evidence was sufficient to justify a commitment on the charge.

Application by William S. Henry for habeas corpus.   Dismissed.

Foster L. Backus, for petitioner.
James W. Ridgway, Dist. Atty., opposed.

GAYNOR, J.   The petitioner sues out the writ of habeas corpus, claiming to be illegally deprived of his liberty by the sheriff of Kings county.   That officer makes return to the writ that he holds him under a commitment of Henry F. Haggerty, Esq., a police justice of the city of Brooklyn.   The commitment recites that the petitioner is held under an order of commitment to answer a charge of murder in the first degree, made by the said magistrate after examination.   The petitioner traverses the return, by alleging that no evidence was given before the magistrate tending to show that the petitioner committed the said crime.

There is such a diversity of expression by text writers and judges in respect of whether such a commitment is conclusive, or whether, on the contrary, inquiry may go behind it upon the writ of habeas corpus, to ascertain whether the committing magistrate had any evidence before him upon which to make it, that I shall state what I concluded while at the bar and still believe the rule in this state to be.   The question is one of jurisdiction in the magistrate.   The jurisdiction of magistrates is limited.   They may not arbitrarily commit one to answer a charge of crime.   If an accused demand an examination, the magistrate may not commit him to answer to a court having cognizance of the crime, unless "it appear that a crime has been committed, and that there is sufficient cause to believe the defendant guilty thereof."   Cr. Code, § 208.   It is not necessary that the evidence be conclusive or sufficient to secure a conviction upon a trial.   It may be less than that.   In fine, if there be any evidence that the accused committed the crime, it is sufficient. If there be no such evidence, then the magistrate is without jurisdiction to commit him.   The present inquiry, therefore, is whether there was any evidence before the magistrate that the accused committed the crime; for that is the test of his jurisdiction.   Church, Hab. Corp. § 236.   The petitioner having alleged in his traverse that there was no such evidence, the burden was upon him to show that to be the case.   To do so, he put in evidence all of the testimony taken before the magistrate.   I have therefore to read it, and

determine whether it contains any evidence that the accused committed the crime.

The accused lived with his father and mother, old people. He had no occupation, and was addicted to the drinking habit. He and the mother were on bad terms with the father, and there were quarrels. The father was comparatively wealthy. They left the house on Saturday, with the avowed purpose of taking legal proceedings to have the father and his property put in charge of a committee. They did not return. On Monday they consulted a lawyer, but he advised them that their wish to have the father declared lunatic or incompetent, so as to have a committee appointed, could not·be carried out. They went that night to the residence of the other son, Walter, at Flatbush, and spoke with him on the same subject. The father, left alone at home, was seen in and out by the neighbors as late as Wednesday. Walter called there and saw him about 5:30 o'clock Wednesday evening. The next morning, about 7 o'clock, the accused was seen by a neighbor hurrying from the house. That day the blinds of the house were not opened. The son Walter called at 5:30 and 8:30 that evening, and again on Friday morning, but could not get in. He called again Friday afternoon, and, finding the house still closed, he notified the police, and, entrance being obtained by an upper window, the father was found dead in the basement hall. He had been murdered by many gashes and blows upon the head. No entrance to the house was found. It was securely closed as for the night: The accused surrendered himself on Saturday, and was questioned by the police. He had slept Sunday, Monday, and Tuesday nights at an hotel in New York City, and had in his possession about $30 on Sunday. He denied that he had been at his father's house on Thursday morning. He accounted for Wednesday night by saying that he had stayed in Prospect Park. He had a cut on the right wrist. He first said he got it in cleaning the range, and then, by catching on a nail getting over the fence of Prospect Park, when ordered out by a policeman. The right sleeve of his white shirt was water-stained from recent washing. An expert cut out several pieces of it, and, upon test, found in each corpuscles of human blood. These are some of the facts. From them the magistrate was, in the exercise of due judicial prudence and discretion, warranted in concluding that there was probable cause to believe that the accused was guilty of the deed. There is some evidence favorable to the accused, and it may be said that the evidence against him is not conclusive. But the law does not allow me to weigh the evidence, pro and con, to form an opinion of guilt or innocence. The sole question is whether there was any evidence upon which the magistrate could make the order of commitment. I think there was. The writ is dismissed, and the prisoner remanded.

Writ dismissed, and prisoner remanded.