(97 N. W. Rep. 853.)

---

State of North Dakota ex rel Wesley Styles *v.* Beaverstad.

Opinion filed December 3, 1903.

**Jurisdictional Matters Only, Not Irregularities and Errors, Reviewed in Habeas Corpus.**

1. On habeas corpus the inquiry is confined to matters which are jurisdictional. Mere irregularities or errors which do not render the proceeding a nullity cannot be considered.

**Court Will Examine as to the Existence, Not Weight, of Evidence.**

2. Where one is committed upon a criminal charge without reasonable or probable cause, he may secure his release on habeas corpus, but the court issuing the writ will look into the evidence taken upon the preliminary examination only far enough to see that there was competent evidence before the magistrate tending to show the two ultimate facts: First, that an offense was committed, and, second, that there was cause to believe that the accused committed it,

**Same.**

3. The statute requires a committing magistrate to act upon evidence in making his findings against one under examination upon a charge of having committed a crime.. That there was evidence upon which his judgment could rest is a jurisdiction prerequisite to a valid commitment. On habeas corpus the reviewing court will inquire into the evidence so far as to see that this jurisdictional requirement was observed, and no farther.

**Same.**

4. On habeas corpus to test the legality of the imprisonment of one held to answer on a criminal charge, the court will not weigh conflicting testimony, or measure the credibility of witnesses; neither will it reverse the finding of the magistrate when there was evidence to sustain his finding. The finding of the magistrate, when acting within his jurisdiction, is conclusive against collateral attack by habeas corpus.

**Jurisdiction of Person, Matter, and to Make the Particular Finding, Renders Judgment Immune From Attack By Habeas Corpus.**

5. In order to render a judgment immune from attack on habeas corpus, the court must have had not only jurisdiction of the subject matter and of the person of the defendant, but also to render the particular judgment in question. All these elements existed in this case, and the commitment, therefore, is impregnable to the attack made upon it.

Wesley Styles, after a preliminary examination before a committing magistrate, was held to answer upon a charge of manslaughter in the first degree, committed upon the person of one Peter J. Selseth. He was committed in default of bail, and petitions for a writ of habeas corpus, alleging that there was not sufficient or probable cause to justify his commitment and detention.

Writ denied.

*Asa J. Styles, Tracy R. Bangs* and *Guy C. H. Corliss,* for petitioner, cited *ex parte Stevens,* 82 Cal. 245, 23 Pac. Rep. 38.

*C. L. Lindstrom,* state's attorney, and *John A. Sorley,* for respondent.

COCHRANE, J. Wesley Styles petitioned this court for a writ of habeas corpus. A stipulation was entered into in open court by the counsel for respective parties, whereby the entire matter is to be disposed of upon the petition for the writ. The physical presence of petitioner before the court was waived, and it was agreed that if, upon a hearing, the court should determine that petitioner

was entitled to his release, the writ should forthwith issue; otherwise its denial should be taken as a finale to this proceeding.

Petitioner was arrested and taken before a justice of the peace of Benson county, in this state, upon a complaint accusing him of the crime of murder. After a preliminary examination before such magistrate, in which all the testimony taken was reduced to writing in the form of depositions, pursuant to section 7960, Rev. Codes 1895, said justice found that the offense of manslaughter in the first degree had been committed, and that there was sufficient cause to believe the defendant, Wesley Styles, guilty thereof, and did order that the defendant be held to answer said charge, and that he be allowed to give bail in the sum of $5,000 for his appearance. The defendant was committed to the custody of the sheriff of Benson county in default of bail, and he prays for his release upon habeas corpus.

No question is raised as to the regularity of his examination or commitment, and it is admitted that the examining magistrate literally and fully complied with the statute as to the conduct of such examination and the making and certifying of the proceedings thereon and return thereof. The only particular wherein petitioner claims that his restraint is illegal is in that the evidence not only failed to show that any offense had been committed, but, as he claims, fully and clearly establishes that, if the death of Peter J. Selseth was in any way caused by the act or agency of petitioner, the same evidence discloses the act to have been committed under such circumstances as constitute excusable homicide. Counsel stipulated that the depositions taken upon the preliminary examination, referred to in and made a part of the petition, contain all the evidence of which the prosecuting counsel had any knowledge, and that these depositions should be referred to by this court as containing all the evidence in the case. An application was made to the judge of the district court of the Second judicial district for a writ of habeas corpus, and the writ was granted upon a petition setting forth the same facts as appear in the petition made to this court. A return was made to such writ by the sheriff of Benson county, showing that he held petitioner by virtue of a commitment, a copy of which was attached; that upon a full hearing before said district judge the writ was discharged, and defendant remanded to the custody of respondent.

Counsel for respondent urges as a preliminary consideration that the order of the district court discharging and remanding the petitioner renders the matters inquired into *res adjudicata;* that petitioner's remedy was by appeal. These questions were severally resolved against respondent's present contention in *Carruth* v. *Taylor,* 8 N. D. 166, 77 N. W. 617. A majority of the court, as now constituted, adhere to the ruling that an order discharging the writ and remanding the petitioner, when made by a district judge, is not an appealable order; and all members of the court are agreed that the order of remand was not *res adjudicata,* but that relator is entitled to have his petition for a second writ upon the same facts considered by this court, notwithstanding such order of the district judge. The statute provides that when it appears on the return of a writ of habeas corpus that the party is in custody by virtue of process from any court of this state or judge or officer thereof, such person may be discharged when he has been committed on a criminal charge without reasonable or probable cause. Subdivision 7 of section 8662, Rev. Codes 1899.

Petitioner claims that he is so committed without reasonable or probable cause, and asks this court to examine the proofs against him, and determine whether or not there is probable cause for his detention. This presents for determination the question to what extent the court, on habeas corpus, will go behind the commitment of a magistrate, and examine the evidence to determine whether there was probable cause for holding one accused to answer upon a charge of having committed a crime. The examination of offenders is intrusted to magistrates, whose jurisdiction is defined and limited by the statute. The function exercised by the magistrate in such examination is a judicial one, and the finding and determination made by him, if the statutory bounds and requirements have been observed and followed, is entitled to the same respect and is of the same binding force as against collateral attack by habeas corpus as is the judgment of a court of general jurisdiction. *People* v. *Protectory,* 106 N. Y. 604, 612, 13 N. E. 435. In the conduct of examinations witnesses must be examined in the presence of the defendant. Section 7960, Rev. Codes 1899. After hearing the evidence on behalf of the respective parties, if it appears either that a public offense has not been committed, or that there is no sufficient cause to believe the defendant guilty thereof, he must be discharged. If, however, it appears from the examina-

tion that a public offense has been committed, and that there is
sufficient cause to believe the defendant guilty thereof, the mag-
istrate must indorse on the complaint an order signed by him to
the effect: "It appearing to me that the offense in the within com-
plaint mentioned (naming it) has been committed, and that there
is sufficient cause to believe the within-named guilty thereof,   I
order that he be held to answer the same." Sections 7964, 7966,
Rev. Codes 1899. It is apparent from this statute that the mag-
istrate must act upon evidence, and that it must appear from the
evidence taken before him that an offense has been committed, and
that there is sufficient cause to believe that the accused committed
it. It is plain, therefore, that the order binding one over to
answer for crime without the taking and hearing of evidence by the
magistrate, unless an examination is waived by the accused, would
be a void order, made contrary to the authority of the statute, and,
consequently, without jurisdiction. It is equally plain that, when
the evidence has been taken and heard, the magistrate   is   the
judicial officer who must pass upon its sufficiency, and decide from
the evidence taken before him whether an offense has been com-
mitted, and determine whether it shows sufficient cause to believe
that the defendant committed it. The determination and order
based on such evidence is a judicial determination by a court of
competent jurisdiction in this behalf, and the commitment of one
accused, based upon such evidence and finding, is lawful, because
made upon reasonable and probable cause. Of course, the evidence
taken must be legal and competent evidence to prove the facts, and
must sustain the findings based thereon; otherwise the findings are
without evidence to sustain them. *State* v. *Huegin,* 110 Wis. 240,
85 N. W. 1046, 1058.

Upon habeas corpus the court ordinarily will inquire no further
than to ascertain whether the court or officer issuing the   pro-
cess on which the prisoner is detained had jurisdiction of the case,
and acted within that jurisdiction in issuing the process. Church,
on Habeas Corpus, section 233; Cooley's Const. Lim. 430; note to
*Koepke* v. *Hill,* 87 Am. St. Rep. 172. Mere errors or irregularities
of procedure, not affecting the question of jurisdiction, are never
reviewable on habeas corpus; and, where the process is regular
and valid upon its face, the inquiry will go only to the question of
jurisdiction. Church on Habeas Corpus, section 236. The statutes
of this state do not change or enlarge the function of the habeas

corpus remedy. Under it the investigation must be confined to jurisdictional matters. The jurisdictional inquiry, however, will extend to the power of the court or magistrate to make the com· mitment. Jurisdiction to make the judgment or order is as essential as is jurisdiction of the person and of the subject matter. Church on Habeas Corpus, section 236; *Miskimins* v. *Shaver* (Wyo.) 58 Pac. 411, 49 L. R. A. 831; *Ex parte Degener*, 30 Tex. App. 366, 17 S. W. 1111; *Ex parte Cox* (Idaho) 32 Pac. 197; *Ex parte Kelly*, 65 Cal. 154, 3 Pac. 673; note to *Koepke* v. *Hill*, 87 Am. St. Rep. 173; *Ex parte Nielsen*, 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118; *In re Boyle* (Mont.) 68 Pac. 409; *In re Knowlton*, (Cal.) 68 Pac. 480. In *State* v. *Losby* (Wis.) 90 N. W. 188, it is said: "In reviewing the proceedings of officers exercising *quasi* judicial powers the function of the writ extends to keeping them within their jurisdiction, as well as reviewing matters of original jurisdiction. These principles have been adhered to by the courts when called upon to test the legality of the commitment of one held to answer upon a criminal charge."

It follows from what has been said that the investigation of the evidence can only go to the extent of determining that there was some competent evidence before the magistrate tending to show the commission of the offense named in the commitment, and ·upon which he could exercise his judgment; because, if there was competent evidence of the commission of the offense, then he had jurisdiction to make the finding, and, no matter how erroneous that finding may be, it being within his power to make, it cannot be inquired into or revised in this proceeding. The following quotations demonstrate the strict adherence of the courts to this rule when called upon to determine by an examination of the evidence taken whether one committed to answer by an examining magistrate has been held on reasonable and probable cause: In *State* v. *Hayden*, 35 Minn. 283, 28 N. W. 659, it is said: "The court or judge is not, in such cases, to sit as a court of review, to determine the sufficiency of the evidence as respects the guilt or innocence of the accused, but to inquire whether the proceedings are without jurisdiction, or the determination of the magistrate unsupported by evidence. His judgment in the premises, upon the evidence, must stand, if there is evidence reasonably tending to support it." In Nevada, where the same provisions of statute are found, it is held that the case, provided for in the statute, where

a party has been committed on a criminal charge without reason-
able or probable cause, has reference to the proceedings prescribed
by the Criminal Practice Code, and applies only to the cases where
the evidence given upon the examination was insufficient to warrant
the committing magistrate in holding the prisoner to answer. It
does not authorize a retrial in this proceeding of the matters then
in issue. The prisoner is not entitled to be discharged upon habeas
corpus unless his imprisonment was unlawful; and his imprison-
ment is not unlawful, no matter how innocent he may now be able
to prove himself, if the evidence taken on his examination was
sufficient to warrant the belief that he was guilty. *Ex parte Allen,*
12 Nev. 87; Church on Habeas Corpus, section 179. In the matter
of Henry (Sup.) 35 N. Y. Supp. 210, it is said: "The question
is one of jurisdiction in the magistrate. The jurisdiction of mag-
istrates is limited. They may not arbitrarily commit one to answer
a charge of crime. If an accused demand an examination, the
magistrate may not commit him to answer to a court having
cognizance of the crime, unless it appears that a crime has been
committed, and that there is sufficient cause to believe the defendant
guilty thereof. Cr. Code, section 208. It is not necessary that the
evidence be conclusive or sufficient to secure a conviction upon a
trial. It may be less than that. In fine, if there be any evidence
that the accused committed the crime, it is sufficient. If there be
no such evidence, then the magistrate is without jurisdiction to
commit him. The present inquiry, therefore, is whether there was
any evidence before the magistrate that the accused committed the
crime, for that is the test of his jurisdiction." Church on Habeas
Corpus, section 236. In *State* v. *Huegin,* 110 Wis. 240, 85 N. W.
1046, the court said: "It is the duty of the court on habeas corpus
to examine the evidence, and treat the decision of the examining
magistrate as outside of his jurisdiction if no competent evidence
is found upon which such·magistrate could properly have acted.
*   *   *   While it is true that such writ never takes the place of
a writ of error, and is confined to jurisdictional defects, when it
is resorted to merely for the purpose of liberating a person de-
tained in custody to wait his trial on a charge of being guilty of
a criminal offense, the questions of whether there was any evidence
for the magistrate to act upon and whether the complaint charges
any offense known to the law are jurisdictional matters. The re-
viewing court, in the exercise of its function, must necessarily

pass upon and affirm the decision of the committing magistrate, if such matters are properly presented for its consideration, according to its determination thereof; and in doing so it does not go beyond the jurisdictional defects. It can examine the evidence only sufficently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that, and weigh the evidence. It can say whether the evidence rendered the charge against the prisoner within reasonable probabilities. That is all. When it has discovered that there was competent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act, upon evidence worthy of consideration in any respect, is as well within his jurisdiction when he decides wrong as when he decides right." See, also, Church on Habeas Corpus, sections 179, 236; *Ex parte Willoughby*, 14 Nev. 451; *In re Levy* (Idaho) 66 Pac. 806; *Ex parte Becker* (Cal.) 25 Pac. 9; *In re Palmer* (Cal.) 25 Pac. 130; *Ex parte Sternes*, 23 Pac. 40; *State* v. *Losby* (Wis.) 90 N. W. 188; *Ex parte Balcom*, 12 Neb. 316, 11 N. W. 312.

It appears from the evidence taken before the committing magistrate in this case that about 7 o'clock on the evening of June 30, 1903, Wesley Styles went to the post office at Maddock, in Benson county, to get his mail. Peter J. Selseth, a middle-aged man, weighing about 165 or 170 pounds, was in the store in the rear of which was the post office. Selseth was drunk. He approached Styles, and asked some questions about internal revenue taxes. Styles endeavored to get away from him. Selseth took hold of the lapel of Styles' coat, shook his fist in Styles' face, called him names, and threatened to fix him, and rubbed his knuckles in Styles' face. Styles escaped from him, went into the post office, followed closely by Selseth, and asked Mr. Ellingson, the postmaster, who was also a justice of the peace, for a warrant of arrest for Selseth on charge of assault and battery. Selseth renewed his profane threats, and struck Styles, then turned upon Ellingson, and made use of profane, vile, and threatening language toward him. Ellingson ordered Selseth out of the office, and upon his refusal to go seized him by the back of the neck and arm, and put him onto the street by force. Selseth held on to Ellingson's coat sleeve, and

dragged or pulled Ellingson off the sidewalk, and about twenty feet into the street, tearing Ellingson's coat. He refused to let go of Ellingson when requested, whereupon Styles went into the street, asked Selseth to release his hold on Ellingson, and proceeded to loosen Selseth's grip. Selseth turned and kicked Styles on the leg. Styles immediately kicked back, striking Selseth in the abdomen below the navel. Styles retreated backward to the sidewalk, followed by Selseth. Selseth immediately complained of great pain in the abdomen, continued to suffer for five days, and died on July 5th. A post-mortem disclosed that Selseth had been suffering from chronic tuberculosis of the peritoneum, and there was evidence that the kick in the abdomen caused tubercular peritonitis to become acute.

Homicide is manslaughter in the first degree when perpetrated without a design to effect death and in heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide. Section 7084, Rev. Codes. We cannot say that there was no evidence here upon which the magistrate could find that the immediate cause of Selseth's death was the kick received from Styles, perpetrated in a cruel and unusual manner, and under circumstances not amounting to excusable or justifiable homicide. This being true, the justice acted within his jurisdiction, and his finding is beyond review in this form of proceeding.

The writ prayed for is denied. All concur.