## Paul B. Fitch v. State of Nebraska.

#### Filed April 12, 1918.   No. 20135.

1. Intoxicating Liquors: Information: Sufficiency.  In a prosecution under chapter 187, Laws 1917, for having possession of intoxicating liquor, the information need not negative the exceptions under which its possession may be lawful, but these are available in defense.

2. ———: Sale: Prohibition.  Under chapter 187, Laws 1917, the sale of intoxicating liquors is absolutely prohibited within this state, except as they may be sold under permit issued by the governor to those bringing themselves within the terms of the act, namely, to a wholesale druggist to "sell wine for sacramental purposes to *bona fide* religious organizations or churches qualified to purchase the same;" and to sell "pure ethyl alcohol to registered pharmacists;" and to "sell to any registered pharmacist owning or conducting a retail drug store, or actually employed in a retail drug store, pure ethyl alcohol and alcohol treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage;" to any church goods house, having a stock of goods of the value of $25,000, to sell wine for sacramental purposes as in the case of wholesale druggists;  to any registered pharmacist to "sell and keep for sale alcohol so treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage."

3. ———: ———: Prohibitory Act: Validity.  Section 11, ch. 187, Laws 1917, bears a reasonable relation to the peace and order of the state and to the enforcement of the law designed to prohibit traffic in intoxicating liquors, and is, therefore, a constitutional enactment.

Error to the district court for Douglas county: Lee S. Estelle, Judge.  *Affirmed.*

*F. W. Fitch,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *John L. Cutright,* contra.

Morrissey, C. J.

At the election held in November, 1916, the following constitutional amendment was adopted:

"On and after May 1, 1917, the manufacture, the sale, the keeping for sale or barter, the sale or barter under any pretext of malt, spirituous, vinous or other intoxicating liquors, are forever prohibited in this state, except for medicinal, scientific, or mechanical, or sacramental purposes."

The succeeding session of the legislature enacted chapter 187, Laws 1917, the purpose and scope of the act being to carry into effect the constitutional provision hereinbefore quoted. Section 11 of this act provides:

"It shall be unlawful for any person to have, possess or permit any intoxicating liquor to be in, upon or about any room, office, building or in any other place except in such person's private dwelling house, and except when and where and in the manner especially authorized as herein otherwise provided."

This statute became operative simultaneously with the quoted section of the Constitution.

May 3, 1917, there was filed in the proper court of Douglas county an information charging: "That Paul B. Fitch on or about the 2d day of May, A. D. 1917, in the county aforesaid and within the incorporate limits of the city of Omaha aforesaid, then and there being, did then and there unlawfully keep and maintain certain intoxicating liquors in his possession, to wit, whiskey, at 624 North Sixteenth street, Omaha, not having a permit from the governor." A jury being waived, and on trial had to the court, defendant demurred to the complaint, which demurrer was overruled. The court found the defendant guilty as charged, and imposed a penalty in the form of a fine in the sum of $100 and costs. Defendant's motion for a new trial was overruled, and he has brought the case here for review.

The act under which the prosecution was brought being of far reaching importance, and this being the first prosecution brought thereunder, the questions presented are of unusual interest.

The first assignment on which defendant relies has to do with the sufficiency of the information. It is

argued that the information is defective because it does not contain the words "room," "office," "building," or "other place than such person's private dwelling house." The act permits under certain restrictions the keeping of intoxicating liquors at a private dwelling house, and the argument is based on the theory that the information ought to have negatived the exceptions contained in the act. Under the old common-law form of information there can be little question that the point would be well taken, but in the instant case we are dealing with a special statute, drafted for the purpose of carrying into effect the aims and purposes of the constitutional amendment. By section 46 of this statute it is provided:

"In any indictment, information, complaint or affidavit for any violation of this act, it shall not be necessary to describe the place where the offense was committed, except to allege that it was committed in the county where the prosecution was had, unless the particular place where the violation occurred constitutes one of the specific ingredients of the offense, nor shall it be necessary to negative any of the exceptions contained in this act, nor shall it be necessary to state the day or the hour when the offense was committed unless the day or hour constitutes a special element or ingredient of the offense."

This provision appears to have been incorporated in the act to make easier its enforcement. Its framers were probably aware of the necessity for making more simple the drafting of informations under a statute the enforcement of which would be left to a great extent to inexperienced village attorneys and police magistrates, and without intending to invade the defendant's constitutional right "to demand the nature and cause of the accusation" (Const., art. I, sec. 11) provided for a less technical form of information than that which has come down to us through the ages. But defendant was deprived of no constitutional right, for the excep-

tions in the statute are reserved to him in his defense. *State v. Bartow,* 95 Wash. 480.

The chief assignment challenges the constitutionality of that part of section 11 which reads: "It shall be unlawful for any person to have, possess or permit any intoxicating liquor to be in, upon or about any room, office, building or any other place except in such person's private dwelling house." It is argued that this clause discriminates between him who owns and occupies a private dwelling house and the less fortunate who "lives in a hotel, boarding house, rents a room, sleeps in a tent or 'hangs his hat on another's hook,' " and denies to the latter class the equal protection of the law; that it violates sections 1 and 3 of the Bill of Rights, and section 1, art. XIV of the amendments of the federal Constitution.

Prior to the time when this act became operative, defendant was a registered pharmacist, licensed to dispense intoxicating liquors, and the liquor which he is charged with unlawfully having in his possession was then lawfully held by him for the purpose of sale. When the statute under consideration became effective, defendant ceased to sell or dispense this liquor, but kept it at his place of business under the belief that he might procure from the governor a permit authorizing him to sell the liquor for medicinal purposes. At the time the complaint was filed he had not sold or offered to sell any thereof, and still contends that it is within the province of the governor to issue a permit for its sale for the purpose stated.

Section 17 provides: "Any registered pharmacist * * * may keep pure ethyl alcohol to be used by him for scientific, mechanical and medicinal purposes only and may sell and keep for sale alcohol so treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage."

The same section makes it the duty of such druggist or pharmacist to file a monthly report with the clerk

of the county in which he does business "setting forth the amount, kind and value of all intoxicating liquors in their possession and all purchases made by them of intoxicating liquors during the month immediately preceding."

Section 18 requires wholesale druggists selling "intoxicating liquors" to make a monthly report to the governor. Section 19 provides: "Every wholesale druggist or registered pharmacist or manufacturer of alcohol before entering into the business of manufacturing, selling or keeping intoxicating liquors for the purposes herein provided, shall first secure a permit therefor from the governor. * * * The governor, if satisfied with the good faith and truthfulness of said application and affidavits, and that the applicant has not been guilty of any violations of this act, * * * shall, upon payment of an annual fee of two dollars by retail druggists, and ten dollars by wholesale druggists or manufacturers of alcohol, issue to such persons a permit to engage in the business of manufacturing or selling and keeping intoxicating liquors for medicinal, mechanical, scientific or sacramental purposes at wholesale, or at retail, as the case may be, under all the provisions and restrictions of this act."

Because the legislature in dealing with these different classes of business used the term "intoxicating liquors," defendant would have us construe the statute so as to authorize the governor to issue a permit for the sale, not alone of pure ethyl alcohol, and "alcohol treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage," and wine for sacramental purposes, but all other intoxicating liquors as well.

Section 12 provides: "It shall be unlawful for any railroad company, express company, common carrier, or any other carrier or person, or any officer, agent, servant, or employee thereof, to deliver or permit, aid, or abet in delivering, or carry for the purpose of de-

livery, any intoxicating liquor, to any person, except pure ethyl alcohol to wholesale druggists, retail druggists, scientific institutions and hospitals and wine for sacramental purposes to wholesale druggists, church goods houses and to authorized representatives of churches and religious societies as provided in this act.''

This language plainly shows that it was the intention of the legislature to prohibit the transportation of all intoxicating liquors except those mentioned in section 12. Since the right to transport is denied, it would be incompatible to hold that a license to sell may be granted.

Section 15 provides terms under which wholesale druggists may sell wine for sacramental purposes to *bona fide* religious organizations or churches qualified to purchase the same, and pure ethyl alcohol and ''alcohol treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage,'' but there is no provision anywhere in the act authorizing the sale of whiskey to any person under any condition, or authorizing its possession by any person except only, as it is permitted to be kept in a private dwelling house.

Keeping in mind the purpose of the constitutional prohibition against the liquor traffic, we may well assume that it was the intention of the legislature to absolutely prohibit the traffic in whiskey, and to limit the traffic in intoxicating liquor even for medicinal purposes to pure ethyl alcohol and ''alcohol treated according to some formula permitted by the United States commissioner of internal revenue so as to render it unfit to be used as a beverage,'' with suitable provision to enable church societies to procure, keep and use wine for sacramental purposes. Where the words ''intoxicating liquors'' are used, they appear to be employed so as to include wine for sacramental purposes as well as pure ethyl alcohol and ''alcohol treated according to some formula permitted by the United States

commissioner of internal revenue so as to render it unfit to be used as a beverage,'' but it cannot be said that it was ever contemplated that whiskey might be sold under any pretense whatsoever.

It is further argued that the statute is beyond the legislative power and violates the Constitution; that the state may not legislate against the possession of intoxicating liquor where it is not shown that the liquor is kept for an unlawful purpose; that it is an unwarranted interference with property rights, and is not within the reasonable exercise of the police power. This contention is not without respectable authority to support it. *Commonwealth v. Campbell*, 133 Ky. 50, and note thereto in 24 L. R. A. n. s. 172; *Commonwealth v. Smith*, 163 Ky. 227, and note thereto in L. R. A. 1915D, 172.

But there is also respectable authority for a contrary holding.

''It may be said in a general way that the police power extends to all great public needs. *Camfield v. United States*, 167 U. S. 518. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion, to be greatly and immediately necessary to the public welfare.'' *Noble State Bank v. Haskell*, 219 U. S. 104.

''The power of the state to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order and prosperity, is a power originally and always belonging to the states, not surrendered by them to the general government nor directly restrained by the Constitution of the United states, and essentially exclusive. * * * In short, it is not to be doubted that the power to make the ordinary regulations of police remains with the individual states, and cannot be assumed by the national government, and that in this respect it is not interfered with by the fourteenth amendment.'' *Barbier v. Connolly*, 113 U. S. 27. See also, *In re Rahrer*, 140 U. S. 545.

Intoxicating liquor is universally regarded as a proper subject of application of the police power. Its power to create evils prejudicial to the highest social order and the welfare of the community is now universally admitted, and the power of the state to prohibit its manufacture or sale is no longer open to question. The general purpose of all of our laws on the subject is to promote temperance and to prevent drunkenness, and this purpose has found expression in our organic law. A statute does not interfere with or impair "any one's constitutional rights of liberty or property when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are, or may become, hurtful to society. * * * Those rights are best secured, in our government, by the observance, upon the part of all, of such regulations as are established by competent authority to promote the common good. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare." *Mugler v. Kansas*, 123 U. S. 623, 663.

The fourteenth amendment was not designed to interfere with the power of the state, sometimes termed its police power to prescribe regulations calculated to promote the health, morals and good order of all the people. *Barbier v. Connolly*, 113 U. S. 27. "A state may absolutely prohibit the manufacture, gift, purchase, sale, or transportation of intoxicating liquors, and may adopt such measures as are reasonably appropriate or needful to render the exercise of this power effective." *Crane v. Campbell*, 245 U. S. 304.

The state having adopted a constitutional amendment forbidding the traffic in liquor, it was left to the legislature to devise a plan to successfully put that policy into operation. In forbidding the keeping of intoxicating liquors at any other place than a private dwelling house, the lawmakers were not attempting to make class distinctions, and, inasmuch as no person is forbidden by the law to own or occupy a private dwelling house, it did

not do so. We have only to consider whether this limitation upon the possession of liquor, even when not held for an unlawful purpose, is a reasonable one. It is idle to forbid the traffic in intoxicants and yet fail to provide an adequate method of enforcing the prohibition. It is common knowledge that officers of the law find it difficult to enforce prohibitory measures. If parties are free to keep quantities of intoxicating liquor in rooms, offices and buildings other than private dwelling houses, the work of the police officers is that much more difficult.

"It is also well established that, when a state exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. * * * With the wisdom of the exercise of that judgment the court has no concern; and, unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended." *Purity Extract & Tonic Co. v. Lynch*, 226 U. S. 192.

It was proper for the legislature to recognize the difficulties which would beset the administration of the new prohibitory law, and the enactment complained of is a proper and reasonable exercise of legislative power.

The judgment is

AFFIRMED.

SEDGWICK, J., dissenting.

The majority opinion concludes that the purpose of the constitutional amendment and the statute is to prevent the manufacture and sale of any and all liquors

102 Neb.—24

except denatured alcohol and ethyl alcohol, and wine for religious purposes, and to prevent qualified druggists, who have a permit under the statute, from selling anything but denatured and ethyl alcohol. The section of the act providing for druggists' permits expressly says that they shall sell for "sacramental" purposes, but denatured and ethyl alcohol cannot be used for sacramental purposes. The same section also provides that druggists' permits shall authorize them to sell for "medicinal" purposes. Under this decision, if physicians can get any liquors for medicinal purposes at all, it can only be from druggists with permits, and then only denatured or ethyl alcohol. There seems to be many other similar violations of the statute in this decision. It seems clear that the purpose of the constitutional amendment and of the statute was to do away with the saloon and drunkenness, and to that end to prohibit the manufacture and sale of any intoxicating liquor to be used as a beverage, and not to prevent the manufacture and sale of intoxicating liquors "for medicinal, scientific, or mechanical, or sacramental purposes" only. The details of this lengthy statute are for the purpose of making sure of that result. How unfortunate it is that the statute is so construed as to hamper and embarass the enforcement of the will of the people of the state so plainly expressed in their amendment to the Constitution and in subsequent legislation. To prevent the manufacture and sale for use as a beverage, the lawful use is clearly defined and provided for by the most careful regulations and safeguards, and there are many very stringent provisions to prevent unlawful sale and use. In the absence of constitutional or statutory prohibition, the right to manufacture and sell an article of value exists, and of course continues to exist except so far as the law expressly prohibits it. The prohibition of the statute is found in the second section of the act, which prohibits the manufacture, sale, etc., of liquors specified in the first section of the act, except "for medicinal, mechanical, scientific, or sacra-

mental purposes." It does not prohibit the manu-
facture and sale of liquors for the four purposes nam-
ed; and it will of course be presumed that it was not the
intention to prohibit for those purposes in subsequent
sections of the act, unless such intention appears from
a reasonable construction of the whole act. As the
act, by its title, relates to intoxicating liquors, it very
properly, in the first section, defines what shall be
meant by "intoxicating liquors." The provision is that
intoxicating liquor or liquors, as used in the act, "shall
be construed to embrace all malt, fermented, vinous or
spirituous liquors, wine, porter, beer, ale or any intoxi-
cating drink, mixture or preparation of like nature, and
all malt or brewed drinks, and all mixtures or prepara-
tions, whether patented or not, which will produce in-
toxication, and, in addition thereto, such liquors of a
different character and not hereinbefore enumerated
*capable of use as a beverage* containing over one-half
of one per centum of alcohol." There are 15 or 16
sections intended to prevent evasions of the act; that is,
to prevent the sale or transfer of intoxicating liquors
"to be used as a beverage." A druggist or registered
pharmacist, who sells intoxicating liquors, must ob-
tain a permit for that purpose (section 19). He must
be a person of "good reputation and standing," not
guilty of any violations of the act. He must make a
sworn application to the governor, supported by the
oaths "of three disinterested freeholders of the county."
He must give 20 days' notice of his application for a
permit. He must have a trial before the county judge
as to his fitness. Any objector may appeal to the courts,
and, if finally it is determined that he is a fit person
for so important a responsibility, he may engage in the
business of selling "intoxicating liquors for medicinal,
mechanical, scientific, or sacramental purposes," unless
his permit is canceled upon "petition to revoke" the
permit, filed by "any resident of the county." Under
the majority opinion, "intoxicating liquors" here means
only denatured and ethyl alcohol; that is, only ethyl

alcohol is covered by the permit because by section 17 "any registered pharmacist" may "sell and keep for sale" denatured alcohol without a permit. If it was intended that all these formalities related only to the sale of ethyl alcohol, why not say so at once? Before selling or keeping ethyl alcohol, as herein provided, he shall secure a permit, etc. But the permit is to sell not one particular liquor, it is intoxicating liquors generally.

This construction is inconsistent with the very section under which this prosecution is brought (section 11). It specifies, "any intoxicating liquor," and allows keeping in "private dwelling house," but under this opinion there is no possible way to get any liquor for any ordinary use, but ethyl alcohol, except denatured alcohol which under section 11 "any person may purchase and keep." The implication of the section, of course, is that any person may keep intoxicating liquors in his private dwelling. If nothing but ethyl alcohol was contemplated in that section, how much more direct and sensible to say, "If any person shall keep said ethyl alcohol," instead of "any intoxicating liquors." The construction is also inconsistent with section 25. Physicians can get no liquors for medicinal purposes except ethyl alcohol, but by section 25 they may use "intoxicating liquors," not one particular kind. Why not, in this section, say ethyl alcohol if that alone was intended.

The second section of the act contains the "prohibitions on liquors in general." It embraces all intoxicating liquors, naming them, and prohibits the manufacture and sale, etc., specifying in detail what is prohibited by the act. We would not expect to find further regulations of the manufacture and sale in a provision as to common carriers. But it is that provision of the act that is relied upon for the construction given. The opinion quotes from section 12: "It shall be unlawful for any railroad company, express company, common carrier, or any other carrier or person, or any officer, agent, servant, or employee thereof, to

deliver or permit, aid, or abet in delivering, or carry for the purpose of delivery, any intoxicating liquor, to any person, except pure ethyl alcohol to wholesale druggists, retail druggists, scientific institutions and hospitals and wine for sacramental purposes to wholesale druggists, church goods houses and to authorized representatives of churches and religious societies as provided in this act." And it then says: "This language plainly shows that it was the intention of the legislature to prohibit the transportation of all intoxicating liquors except those mentioned in section 12. Since the right to transport is denied, it would be incompatible to hold that a license to sell may be granted." That is to say, carriers cannot deliver to druggists any liquor except ethyl and denatured alcohol, and therefore the statute does not mean what it says—that the permit shall be "to engage in the business of manufacturing or selling and keeping intoxicating liquors for medicinal, mechanical, scientific or sacramental purposes" (section 19). If the provisions of the statute are really inconsistent, the construction should be in harmony with the declared purpose and intention of the act. The section as to permits, being later in the statute, is, under a familiar rule, to be regarded as the final word of legislation.

The section in regard to common carriers, as quoted above, is indeed peculiar. That section, as originally introduced in the legislature, was in harmony with the true purpose and intention of the act. It related to deliveries to individual persons, and not to authorized agencies for furnishing liquors for the purposes named in the act—"medicinal, mechanical, scientific or sacramental purposes." It was proposed to amend the act by striking out the section. Afterwards there were more than a dozen different amendments of the section, by striking out a word or a line here and there, and by inserting words and lines in different places. The record of these amendments indicates that some persons interested desired to make the whole act unpopular and incapable of enforcement, and the legislators who de-

sired to make that section harmonize with the other pro-visions and with the purpose and intention of the act were only partially able to do so. If the language of this section, taken by itself and construed literally, would prevent the carriers of this state from making deliveries to qualified druggists, so that they could sell for "medicinal, mechanical, scientific or sacramental purposes," as they were specifically authorized by their permits to do, it cannot under any accepted rule of construction be held that the legislature intended such result. Such inconsistencies, if any, must be harmonized so as to carry out the plain intention of the people as expressed by their Constitution and Legislature.

Section 20 describes the authorized permit as a permit to "manufacture or sell ethyl alcohol or sell or keep intoxicating liquors for the purpose authorized in this act." This is an express declaration that the permit is to sell both ethyl alcohol and intoxicating liquors as defined in the beginning of the act. Section 22 also uses the words "for the purpose aforesaid." This and the three preceding sections regulate the sale of intoxicating liquors for "medicinal, mechanical, scientific or sacramental purposes," and these purposes are mentioned in each of the preceding sections. So that it is clear that the words, "for the purpose aforesaid," relate to these four uses, and that, when a druggist has complied with these sections and obtained a permit, he may sell for those purposes. This is another express statement that intoxicating liquors may be sold by one having a permit for those purposes. The same section also provides: "*Authority to sell intoxicating liquors* shall be granted only to *bona fide* citizens of this state or to corporations duly authorized to transact business in this state." The office of the word "only" is to exclude others than *bona fide* citizens and certain corporations. How such repeated language as this can be so misunderstood is remarkable, to say the least.

Pure ethyl alcohol is rarely used for medicinal purposes, except in the preparation of drugs, and the "fruit

of the vine,'' and not alcohol, is used for sacramental purposes. To provide, therefore, that only alcohol shall be used for medicinal purposes practically prohibits the use of all liquor for such purpose. The state in its brief in this case has not presumed to ask for such a construction of the statute.

It is suggested that, as the statute does not give authority to druggists who obtain the necessary permit to buy liquors, therefore we cannot assume that the legislature intended to allow them to sell. The buying of intoxicating liquors is nowhere mentioned in the act, and therefore, as it is a prohibitory and not an enabling act, the act does not prohibit the buying of intoxicating liquors. It follows that the authority to sell assumes. and includes the authority to buy, since it cannot be. supposed that the legislature intended that all registered pharmacists having permit to sell would be able to manufacture their own liquors.

The constitutional amendment by its terms took effect on the 1st day of May, but the statute we are considering by the emergency clause was to "take effect and be in force from and after May 1st," that is, at midnight after that day. A few hours later, on the 2d day of May, the authorities began proceedings against the defendant by entering his drug store and seizing the property. The brief for the prosecution says that the defendant "is a registered pharmacist conducting a retail drug business with a stock of drugs and medicines valued at some $5,000" in the city of Omaha. His possession of these liquors, therefore, was lawful, and it is conceded that he carefully conducted a lawful business until midnight after the 1st day of May. He promptly made application for a permit under this new statute, which, by the terms of the statute itself, he could not obtain until the matter had been considered for 20 days. In the meantime he made no sales and took no action of any kind in violation of law. Under the construction now given to the statute, he could not after this act took effect legally in any manner dispose of the prop-

erty seized. His violation of law consists in not having disposed of it before the act took effect. As a retail druggist he was not authorized to sell at wholesale, so that there was nothing left for him to do but to destroy the goods before the law took effect. Such legislation would be of the nature of an *"ex post facto"* law, and under such construction the statute itself destroyed defendant's property, and violates both sections 3 and 16 of the Bill of Rights. Section 3: "No person shall be deprived of life, liberty, or property, without due process of law." Section 16: "No bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities shall be passed." It is inconceivable that the people of this state, either by their votes upon the adoption of the constitutional amendment or through the action of the legislature, intended such a result.

It is said in the majority opinion that it was not intended "to invade the defendant's constitutional right 'to demand the nature and cause of accusation,' " *"and to have a copy thereof."* Const., art. I, sec. 11. It alleged in the information that he did not have a permit, and the conclusion is that the information was sufficient, and that it was not necessary to allege therein that the defendant had, possessed, or permitted "any intoxicating liquor to be in, upon, or about any room, office, building, or in any other place" than his "private dwelling house." This construction of the statute is predicated upon the use of the word "except" in section 11 of the act, and the provision in section 46 of the act, which is that it shall not be necessary in the information "to describe the place where the offense was committed, * * * unless the particular place where the violation occurred constitutes one of the specific ingredients of the offense." And so the defendant at the time was keeping these liquors in the wrong place, and yet the fact that he did so is not thought to be one of the "specific ingredients of the offense." If instead

of the use of the word "except" in section 11 the provision had been, "It shall be unlawful for any person to have, possess, or permit any intoxicating liquor to be in, upon or about any room, office, building or in any other place *than* in such person's private dwelling house," the meaning would have been the same and the language would have been more accurate. The meaning clearly is that if kept in his private dwelling house he is innocent, but if kept in any other place he is guilty. And the use of the word "except" here in stead of the word "than" is not at all within the meaning intended in the provision of section 46 that it shall not be necessary to negative exceptions contained in the act. The substance of the offense is in having the intoxicating liquors in a place specified in the statute, and no crime can be charged without the allegation that the defendant had them in some one or more of the places specified. The fact that the liquors were not kept in a "private dwelling house" is more than a "specific ingredient of the offense." It is the very substance of the offense itself, and no offense can be charged under this provision of section 11 without charging that the liquors were so kept. The legislature recognized the importance of this fact, and in the first section took particular pains to define definitely what shall be considered a "private dwelling house." The information is clearly insufficient. This, however, is a matter in which the temperance people of the state are not so vitally interested.

The statute clearly intends to conform to the Constitution, and prohibit the manufacture and sale of intoxicating liquors as a beverage, and to so guard its sale for the lawful uses named as to make the prohibition of unlawful use effective. By the forced construction now given, to a statute which was intended to abolish the open saloon and prevent drunkenness and crime, the whole legislation is thrown into confusion and the real purpose of the people largely thwarted.

CORNISH, J., concurs in this dissent.