STATE OF NORTH DAKOTA EX REL. HERB E. GERMAIN, Petitioner, v. JAMES H. ROSS, as Sheriff of Stutsman County, North Dakota, Defendant.

(—— N. W. ——.)

Committing magistrate — authority of — to hold one accused of crime — evidence required — need not be of convincing character beyond reasonable doubt — guilt of accused — sufficient cause to believe.

1. In order to authorize a committing magistrate to hold one accused of crime for trial, it is not required that the evidence submitted be of such convincing character as to establish the guilt of the accused beyond a reasonable doubt. All that is required is that the evidence reasonably show that there is sufficient cause to believe the accused guilty of an offense.

Criminal charge — commitment on — assailed by habeas corpus proceedings — grounds of — insufficiency of evidence — reasonable and probable cause — review to ascertain.

2. Where one who is committed upon a criminal charge assails the validity of the commitment in a habeas corpus proceeding on the ground of the insufficiency of the evidence, the reviewing court will inquire into the evidence only far enough to ascertain whether the accused has been committed on such criminal charge without reasonable or probable cause.

Intoxicating liquors — manufacture or sell — no inherent right in citizen to do so — agent of another in such traffic — immunity to citizens — statute does not abridge.

3. There is no inherent right in a citizen of the United States to manufacture or sell intoxicating liquors, or to engage in the liquor traffic as the purchasing agent of another. And chapter 194, Laws 1915, which prohibits any person from acting as the agent of another in the purchase or sale of intoxicating liquors, does not abridge any privilege or immunity guaranteed to citizens of the United States by the 14th Amendment to the Constitution of the United States.

Statute — liquor laws — do not contravene Constitution.

4. Chapter 194, Laws 1915, does not contravene § 1 of the North Dakota Constitution, which declares that "all men are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness."

Constitution — inhibition — legislative power — passage of laws.

5. Chapter 194, Laws 1915, does not violate any express or implied inhibition upon legislative power contained in § 217 of the Constitution, which provides: "No person, association or corporation shall within this state, manufacture for sale or gift, any intoxicating liquors, and no person, association or corporation shall import any of the same for sale or gift, or keep or sell or offer the same for sale, or gift, barter or trade as a beverage. The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article and shall thereby provide suitable penalties for the violation thereof."

Opinion filed May 2, 1918.

Application by Herb E. Germain for a writ of habeas corpus. Writ denied.

*J. A. Jorgenson,* for petitioner.

*J. W. Carr,* State's Attorney, *Wm. Langer,* Attorney General, and *Daniel V. Brennan,* Assistant Attorney General, for respondent.

CHRISTIANSON, J. This is an original application for a writ of habeas corpus, presented to this court after a denial of an application for such writ by Judge Coffey of the fifth judicial district, wherein the petitioner is confined. It appears from the petition that the relator was arrested for violating the so-called "Bootlegging" statute. Laws 1915, chap. 194. And that upon a preliminary examination duly had before a justice of the peace in Stutsman county, North Dakota, the relator was held to answer the charge set forth in the complaint at the next term of the district court, bail being fixed at $2,000. The defendant is now confined in the county jail of Stutsman county by the sheriff of said county under and by virtue of the commitment issued by said justice of the peace.

The relator contends that the commitment under which he is held is void for three reasons: (1) That the evidence is insufficient and fails to show that defendant has committed the alleged offense charged; (2) that the statute for the violation of which relator has been arrested is unconstitutional; and (3) that the bail demanded is unreasonable and excessive. We will consider these propositions in the order stated.

(1) It appears from the transcript submitted by the relator that the prosecution called the chief of police of the city of Jamestown as a witness, and he testified that he had occupied such official position in all for ten years; that he was acquainted with the relator and had known him since last fall; that he had a conversation with the relator on the morning of the day on which the preliminary examination was had; that such conversation was had in the presence of the committing magistrate; that during such conversation the relator stated that he had bought from 10 to 12 quarts of whisky in January and February, 1918; that he bought such whisky for parties who came up and asked him to get it for them; that these transactions took place on the streets of the city of Jamestown; that the relator claimed that he received no monetary profit from the transactions, but just got the drinks.

While the right to a preliminary hearing is universally recognized in this country, and in fact in all English-speaking countries (8 R. C. L. p. 104, § 66), such right is not a constitutional one, but is one granted by statute only. See State v. Hart, 30 N. D. 368, 373, 152 N. W. 672. The objects of a preliminary examination are: "To ascertain if a crime has been committed, and, if so, whether there is evidence suffi-

cient to give probable cause for believing that the arrested man is guilty of the crime, that he may not be further deprived of his liberty if there is no cause for such belief, and, in case there should be cause for such belief, that he may be informed of the nature of the accusation, and the state may take the necessary steps to bring him to trial; to perpetuate testimony which can be given at the time; and to determine the amount of bail to be given by the prisoner in case he is held for trial." 8 R. C. L. p. 104, § 66.

A complaint before a magistrate for the purpose of a preliminary examination only does not require the same certainty in the statement of the offense as an information, indictment, or complaint upon which the accused is tried. See State v. Hart, 30 N. D. 368, 152 N. W. 672, and authorities therein cited. And it has been said that the hearing is not governed by all the technical rules applicable upon a final trial. 11 Cyc. 309, 310.

In order to justify a committing magistrate in holding an accused for trial, it is not required that the evidence submitted be of such convincing character as to establish the guilt of the accused beyond a reasonable doubt. All that is required is that there be sufficient evidence to make it appear that a public offense has been committed and that there is sufficient cause to believe the accused guilty thereof. Comp. Laws 1913, § 10,611; Re Mitchell, 1 Cal. App. 396, 82 Pac. 347.

Cyc. (12 Cyc. 311), says: "It [the evidence] is sufficient to authorize the commitment of the accused or the holding him to bail if it be shown that probable cause exists to believe that he committed the crime charged, and the sufficiency of the facts from which this may be deduced is for the determination of the magistrate alone. It is not necessary to produce evidence which would convince a jury of the guilt of the accused beyond a reasonable doubt. A statute which forbids a conviction on the unsupported testimony of the prosecutrix, as in the case of seduction or rape, does not apply to a preliminary examination, but furnishes a rule of evidence for the trial only. The confession of the accused will justify holding him, although without proof of the *corpus delicti* or any other evidence." See also Re Dempsey, 65 N. Y. Supp. 717; 8 R. C. L. p. 106, § 68.

The inquiry on habeas corpus is confined to jurisdictional matters. And as the statute requires a committing magistrate to act upon evi-

dence in making his findings against one under examination upon a charge of having committed a crime, he is without authority to hold such person for trial unless a preliminary examination is waived, or there is some evidence produced at the hearing to justify the order of commitment. Such evidence is a jurisdictional prerequisite to a valid commitment, and on habeas corpus the reviewing court will inquire into the evidence so far as to see that this jurisdictional requirement has been observed, and no further. And it is well settled that on habeas corpus the court will not weigh conflicting testimony or measure the credibility of witnesses; nor will it substitute its judgment upon these questions for that of the committing magistrate. State ex rel. Styles v. Beaverstad, 12 N. D. 527, 97 N. W. 548. In a well-considered case on this subject the supreme court of Wisconsin said: "The reviewing court, in the exercise of its function, must necessarily pass upon and reverse or affirm the decision of the committing magistrate, if such matters are properly presented for its consideration, according to its determination thereof, and in doing so it does not go beyond jurisdictional defects. It can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. It cannot go beyond that and weigh the evidence. It can say whether the complaint will admit of a construction charging a criminal offense, or whether the evidence rendered the charge against the prisoner within reasonable probabilities. That is all. When it has discovered that there was competent evidence for the judicial mind of the examining magistrate to act upon in determining the existence of the essential facts, it has reached the limit of its jurisdiction on that point. If the examining magistrate acts without evidence, he exceeds his jurisdiction; but any act upon evidence worthy of consideration in any aspect is as well within his jurisdiction when he decides wrong as when he decides right." State ex rel. Durner v. Huegin, 110 Wis. 189, 237, 62 L.R.A. 700, 85 N. W. 1046, 15 Am. Crim. Rep. 332.

In this state the extent of review of the sufficiency of the evidence on habeas corpus is prescribed by the statute. And it authorizes a reviewing court to discharge a person committed on a criminal charge only when it is made to appear that such "party has been committed on a criminal charge without reasonable or probable cause." Comp. Laws

1913, § 11,373, subd. 7. Under the plain language of this statute the reviewing court may examine the evidence only far enough to ascertain whether the accused has been committed on a criminal charge without reasonable or probable cause; and unless the reviewing court, after an examination of the evidence, can answer the question raised as to the reasonableness or probability in the affirmative, it should not disturb the findings of the committing magistrate.

It is unnecessary for us in the instant case to determine whether a conviction for the crime of bootlegging can be sustained where the only evidence tending to establish it is the confession or admission of the accused, as that question is not before us. We are wholly agreed, however, that the evidence of the confession or admission in the case at bar was sufficient to justify the committing magistrate in holding the accused for trial, and that this court cannot say that the accused has been committed without reasonable or probable cause.

The statute which relator is charged with violating was enacted by the legislature in 1915. It provides: "Any person who shall sell or barter any intoxicating liquor upon any premises or place, public or private, within the state of North Dakota, not owned, kept, maintained or controlled by him; or, who shall act, directly or indirectly, with or without compensation, as the agent of another in connection with the purchase, or sale of intoxicating liquors; or, who shall solicit, procure or receive from any person, any order, providing for the purchase, sale or furnishing of intoxicating liquors either for delivery from within or from without this state, except from those authorized by law to sell or barter the same within this state, or, who shall aid, assist or abet in the commission of such crime, shall be guilty of the crime of bootlegging." Laws 1915, chap. 194.

Relator contends that this statute violates: (1) The clause of the 14th Amendment to the Federal Constitution, which prohibits any state from enacting or enforcing "any law which shall abridge the privileges or immunities of citizens of the United States;" (2) § 1 of article 1 of the Declaration of Rights of the state Constitution, which declares that "all men are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing, and protecting property and reputation; and pursuing and obtaining safety and happiness;"

and (3) § 217 of the North Dakota Constitution, which provides: "No. person, association or corporation shall within this state, manufacture for sale or gift, any intoxicating liquors, and no person, association or corporation shall import any of the same for sale or gift, or keep or sell or offer the same for sale, or gift, barter or trade as a beverage. The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article and shall thereby provide suitable penalties for the violation thereof."

(1) The first question is: Does the statute abridge any privilege or immunity guaranteed to the relator as a citizen of the United States? We are entirely satisfied that it does not.

Laws regulating or prohibiting the traffic of intoxicants are referable to and comprehended under the police power of the government. 15 R. C. L. p. 254; 7 Enc. U. S. Sup. Ct. Rep. 519. And the general power of the states to control, regulate, and prohibit within their borders, the business of dealing in, or soliciting orders for, the purchase of intoxicating liquors, is beyond question. 7 Enc. U. S. Sup. Ct. Rep. 519.

The question of state power to deal with the liquor traffic has been considered by the Supreme Court of the United States in many cases both prior and subsequent to the adoption of the 14th Amendment. In a leading case decided at the January term, 1847, Chief Justice Taney, who prepared the principal opinion, said: "If any state deems the retail and internal traffic in ardent spirits injurious to its citizens and calculated to produce illness, vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic or from prohibiting it altogether if it thinks proper." License Cases, 5 How. 504, 12 L. ed. 256.

In considering a similar question in a case decided at the October term, 1890, the court, in a unanimous opinion prepared by Mr. Justice Field, said: "It is a question of public expediency and public morality, and not of Federal law. The police power of the state is fully competent to regulate the business,—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be

permitted under such conditions as will limit to the utmost its evils."
Crowley v. Christensen, 137 U. S. 86, 34 L. ed. 620, 11 Sup. Ct. Rep.
13.

And in the recent case of Clark Distilling Co. v. Western Maryland
R. Co. 242 U. S. 311, 61 L. ed. 326, L.R.A.1917B, 1218, 37 Sup. Ct.
Rep. 180, Ann. Cas. 1917B, 845 (decided at the October term, 1916),
the court held that a state may consistently with the 14th Amendment
of the Federal Constitution forbid all shipments of intoxicating liquor,
whether intended for personal use or otherwise. These decisions of the
United States Supreme Court entirely dispose of relator's contention
that the statute under consideration violates the 14th Amendment. See
also Crane v. Campbell, 245 U. S. 304, 62 L. ed. 304, 38 Sup. Ct.
Rep. 98; State v. Brown, 40 S. D. 372, 167 N. W. 400; Fitch v. State,
102 Neb. 361, 167 N. W. 417.

(2) The next question is: Does the statute violate § 1 of article 1
of the state Constitution? We have no hesitation in answering this
question in the negative.

In construing a constitutional provision it is the duty of the court
to consider the whole instrument, if necessary, to ascertain the true in-
tent and meaning of any particular provision. All provisions bearing
upon any particular subject are to be brought into view and so inter-
preted as to effectuate the great purpose of the instrument. If possible,
effect should be given to every part and every word, and the court should
avoid a construction which renders any provision meaningless or inop-
erative. 6 R. C. L. pp. 47, 48.

The basic principle which underlies all legislation relative to the
liquor traffic is that the traffic is one which the state may regulate or
prohibit in the interests of public morality and welfare. The purpose
of all legislation prohibiting the sale of intoxicants is to discourage
and prevent their use. This was the obvious purpose of § 217 of the
state Constitution.

In this state the people, in their Constitution, have solemnly declared
that the manufacture and sale of liquor shall be prohibited, and com-
manded their lawmakers to put the constitutional policy into effect by
the enactment of proper legislation.

The men who framed and the people who adopted the state Constitu-
tion, in plain and unmistakable language declared that no one had any

right, within the borders of North Dakota, to manufacture or import for sale, or keep or offer for sale, as a beverage, any intoxicating liquor. Not only so, but they specifically commanded the legislature to enact suitable legislation to make such traffic illegal and to provide suitable penalties for any person who engaged therein. Manifestly the prohibition of the manufacture, importation, and sale of intoxicating liquor would tend to render it difficult for any citizen to purchase such liquor.

It cannot be assumed that the men who framed and adopted the Constitution, and declared that the liquor traffic should be prohibited and a penalty imposed upon anyone who engaged in the manufacture or sale of intoxicants, nevertheless intended to reserve to every citizen of the state as an inalienable right essential to life, liberty, and happiness, the right to act as agent for another in the purchase of intoxicants. A bare statement of the proposition demonstrates its unsoundness.

(3) Does the statute contravene § 217 of the state Constitution? We think not. This section is a declaration of constitutional policy. The purpose and spirit of the provision is manifest. The section is not intended to confer any power on the legislature, but constitutes a command on the part of the people to the legislature to enact certain legislation to carry into effect the policy declared in the section. Clearly the statute under consideration does not violate any express inhibition contained in the section. The relator, however, asserts that § 217 merely prohibits the manufacture, sale, or gift of intoxicants, and contains no prohibition or restriction on the right to purchase or acquire the same. And it is contended that the express mention of the acts to be prohibited must be deemed to evince an intent to exclude all acts not enumerated, and to restrict legislative action to those specifically enumerated. It is well to remember that the principle invoked by the relator is merely a rule of construction. And that the great fundamental purpose of, and rule in, construing all constitutional provisions, is to ascertain and give effect to the intent of the framers and of the people who adopted it. Keeping in mind the object sought to be accomplished, and the evils, if any, sought to be remedied or prevented, by its adoption, the court should aim to give effect to the purpose indicated by a fair interpretation of the language used. 12 C. J. 700–702.

The Constitution recognized the liquor traffic as an existing evil, and that public morality and welfare required that it be prohibited within

the state. It ought not to be assumed that those who framed and adopted this provision intended to place any restriction upon the powers of the legislature to enact laws for the purpose of carrying into effect the very policy solemnly proclaimed in the provision. On the contrary, we must assume, in absence of clear evidence to the contrary, that they intended that the legislature should have the power to enact suitable laws to prevent the evil sought to be prevented and carry into effect the constitutional policy declared. As was said by the supreme court of Michigan in answering the contention that the enumeration in the Constitution of certain corporations subject to taxation limited the right of the legislature to impose taxes upon corporations to the corporations enumerated: "Considering the nature and object of a state Constitution, there could have been no necessity for any such specific grant of legislative power; since, according to well-settled principles, the particular authority would have been as clearly within the competency of the legislature without any such provision, as with it. . . . In the absence of any provision clearly evincing an intention to abandon the power in question, the purpose to relinquish it ought not to be presumed. . . . As the necessities of the state, under all circumstances, could never be accurately measured in advance, nor the resources of the community, in all their possible changes and relations, be anticipated or conjectured, it would seem reasonable to suppose that a people, so well versed in political affairs as those of this state, would not purposely withhold from their own government the power to supply the public wants by any eligible method of taxation, or deny themselves the right of selection among the rightful objects of it. A contrary view would pre-suppose the deliberate establishment of government, and the equally deliberate denial of a power which might be ultimately necessary to enable it to accomplish the ends of its institution. That a course so extraordinary had been pursued could never be admitted, except upon the clearest evidence." Walcott v. People; 17 Mich. 68. See also State v. Fargo Bottling Works Co. 19 N. D. 396, 26 L.R.A. (N.S.) 872, 124 N. W. 387.

Whether the legislature may, under our Constitution, prohibit the importation or purchase of intoxicants by a person for his own use, is not before us, and upon this question we express no opinion. We are, however, wholly satisfied that the legislature has the power to prohibit

persons from purchasing liquors for and delivering them to others. The statute before us does not prohibit a person from purchasing or receiving intoxicating liquors for his own personal use, but does prohibit a person from acting as the agent of another in the purchase or sale of intoxicants. In our opinion the purpose of the statute under consideration is to carry into effect the policy declared in § 217 of the Constitution, and to prevent evasion thereof by the device of agency. If § 217 is susceptible of the construction contended for by relator's counsel it would be largely a dead letter. Instead of preventing the sale of intoxicants, it would in effect shear the legislature of much of the power which it otherwise would possess to deal with the liquor traffic. If relator's argument is sound a number of persons might employ a person to act as their agent in the purchase and importation of intoxicants, and in this manner the very object of the constitutional provision be defeated. In our opinion the statute does not violate any of the constitutional provisions invoked, but is a valid enactment.

(4) With respect to the amount of bail little need be said. The maximum penalty for a violation of the statute is: (1) For the first offense imprisonment in the state penitentiary under an indeterminate sentence of from one year to three years for the first offense; and (2) for the second and each succeeding similar imprisonment for not less than two or more than five years. Under these circumstances we cannot say that the bail fixed is so grossly excessive as to justify any interference therewith. Upon the argument Mr. Brennan, the assistant attorney general, who represented the state, stated that bail in the sum of $1,000 would be adequate to insure the appearance of the relator for trial, and that the state was willing to have the bail reduced to that amount. For this reason bail is reduced to the sum of $1,000.

Writ denied.

ROBINSON, J. (dissenting). It is nearly two months since this matter was brought before the court and an application for a habeas corpus for the purpose of discharging the defendant or reducing the bail from $2,000 to $500. The case was heard in a very summary manner by three judges, and the consensus of opinion seemed to be that the bail should be reduced to $500. That is the sum I named as just and fair and no one said a word to the contrary.

The case should have been promptly decided and the bail reduced and the defendant permitted to go to work. Aside from the mere statement of the defendant himself, there is not a word of evidence to show the commission of any crime. There was not a word of testimony only as to what the defendant said concerning the purchase of liquor for a certain party. Now the commission of crime cannot be proven by mere confession. Thus, if the defendant had said that he stole a horse from John Smith, the proof would be insufficient without a showing that a horse was actually stolen from John Smith. It is no uncommon thing to hear people sit around and boast of petty crimes and misdemeanors they never committed, but that is neither here nor there.

The Constitution provides that excessive bail shall not be required nor excessive fines imposed. In this case it was sheer cruelty to refuse bail in the sum of $500 and to retain defendant in jail eating the bread of idleness at the expense of Stutsman county, when he is a worker and his work is so much needed.