Appeal from Fourth District.

## BIVANS et al. v. UTAH LAKE LAND, WATER & POWER CO. et al.   (CHURCHILL et al., Interveners.)

No. 3189.   Decided Aug. 20, 1918.   (174 Pac., 1126.)

1. APPEAL AND ERROR—"FINAL ORDER." If order of court in case submitted to arbitrators pursuant to statute leaves issues in such condition that way to try same in particular proceeding is still open, ordinarily such order is not "final order," supporting appeal. (Page 606.)

2. APPEAL AND ERROR—ORDER IN CASE SUBMITTED TO ARBITRATORS—CONSTITUTION AND STATUTES—FINAL ORDER. Order of court, pursuant to Comp. Laws 1907, Section 3228, in case submitted to arbitrators, which order not only set aside award and failed to order resubmission, but affirmatively ordered plaintiffs and interveners to present their claims for damages to receiver of defendant corporation appointed in another action, was "final order," supporting appeal, under sections 3230, 3300, and Const. art. 8, Section 9.[1] (Page 606.)

3. APPEAL AND ERROR—REVIEW—SUFFICIENCY OF EVIDENCE—RULE OF COURT. Under rule 6 of Supreme Court (33 Utah VII, 97 Pac. ix), if any point concerning sufficiency or insufficiency of evidence is involved in appeal, appellant must set forth in printed abstract full substance of evidence, and, where that is not done, question of its sufficiency is not presented.   (Page 611.)

4. APPEAL AND ERROR—REVIEW—SUFFICIENCY OF EVIDENCE—BRIEF. Where appellant's brief does not argue the evidence, question of sufficiency of the evidence will not be reviewed.[2]   (Page 611.)

5. APPEAL AND ERROR—STIPULATION FOR "APPEAL." Where parties stipulate either might "appeal" to court on question whether any damages should be allowed by arbitrators, but not as to amount, etc., "appeal" did not mean technical appeal, but was used broadly, as meaning presentment of point reserved to court by means of motion under Comp. Laws 1907, Section 3228.   (Page 611.)

6. ARBITRATION AND AWARD—AGREEMENT FOR ARBITRATION—IMPLIED COVENANTS. Law reads into agreement to submit case to arbitrators covenant that proceeding shall be fair, that statement of items of

---

[1] *North Point Canal Co.* v. *Utah & S. L. Canal Co.*, 14 Utah, 155, 46 Pac. 824; *Eastman* v. *Gurrey*, 14 Utah, 169, 46 Pac. 828; *State* v. *Olsen*, 39 Utah, 177, 115 Pac. 968; *Winnovich* v. *Emery*, 33 Utah, 345, 93 Pac. 988; *Bristol* v. *Brent*, 35 Utah, 213, 99 Pac. 1000.

[2] *Vance* v. *Heath*, 42 Utah, 148, 129 Pac. 365.

Bivans et al. v. Utah Land, Water & Power Co. et al., 53 Utah 601.

damages claimed shall be reasonably specific, that evidence shall be competent and of probative value, that claims made shall be competent, and that each party shall have fair hearing, and breach of any such covenant is matter for judicial investigation. (Page 612.)

7. ARBITRATION AND AWARD—IRREGULARITIES AND INFORMALITIES. Awards of arbitrators will not be disturbed on account of irregularities or informalities, or because court does not agree, provided proceeding has been fair and honest, and parties' substantial rights have been respected. (Page 612.)

8. DAMAGES—INJURY TO LAND—"DEPRECIATION." Where landowner, operating through land and water companies, sold land and agreed to deliver water for irrigation, but failed to do so, no water ever having been delivered to land, name or nature of loss to purchaser was not "depreciation" in value of land.[3] (Page 613.)

9. APPEAL AND ERROR—RESERVATION OF GROUNDS OF REVIEW—OBJECTIONS TO EVIDENCE. Where no specific objection was made in court below as to form in which evidence taken before arbitrators was offered, any defects were waived, and evidence is not before Supreme Court for review on appeal.[4] (Page 614.)

10. ATTORNEY AND CLIENT—POWER TO COMPROMISE. Attorney, acting under general authority to conduct case, has no power to compromise it. (Page 616.)

11. ATTORNEY AND CLIENT—UNAUTHORIZED ACT—RATIFICATION. Act of attorney in excess of authority may be ratified by principal. (Page 616.)

12. ATTORNEY AND CLIENT—STIPULATIONS FOR COMPROMISE AND ARBITRATION—RATIFICATION. Unauthorized acts of defendants' attorneys in signing stipulations disposing of part of controversy by compromise and settlement, and of another part by reference to arbitration, *held* not only ratified by passive acquiescence of defendants, but also affirmatively adopted by them. (Page 616.)

13. CONTRACTS—LAW AS PART. Law existing at time contract is made is always held to be a part of it. (Page 618.)

14. APPEAL AND ERROR—REVIEW—MATTER NOT PRESENTED. Where, on appeal, neither party to controversy submitted to arbitrators assigns error, or makes any point as to court's order directing plaintiffs to present damage claims to a receiver, Supreme Court cannot review such order. (Page 619.)

---

[3] *Cleary* v. *Shand*, 48 Utah, 640, 161 Pac. 453.
[4] *American Pub. Co.* v. *Mayne*, 9 Utah, 318, 34 Pac. 247; *Kipros* v. *Railway*, 45 Utah, 389, 146 Pac. 292.

Appeal from the District Court of Utah County, Fourth District; *Hon. A. B. Morgan*, Judge.

Action by S. A. Bivans and others against the Utah Lake Land, Water & Power Company and others, wherein George O. Churchill and others intervened.

From an order or decree granting motion to vacate awards of arbitrators, all plaintiffs and interveners deeming themselves prejudiced appeal, and defendants and a receiver also appeal from certain parts of the order or decree confirming the settlement made.

AFFIRMED.

*W. I. Snyder* for plaintiffs.

*Walton & Walton* for interveners.

*Thurman, Wedgwood & Irvine* for defendants.

## STATEMENT OF FACTS.

This action was brought in the court below by Bivans and twenty-seven other plaintiffs against Utah Lake Land, Water & Power Company, a corporation, Elberta Orchard Company, a corporation, and M. B. Whitney, defendants. Eighteen other parties intervened as parties plaintiff. So far as issues presented upon this appeal are concerned, both plaintiffs and interveners may be placed in one class. The complaint covers twenty-eight typewritten pages, but the substance of its contents, broadly stated, is as follows:

Defendant M. B. Whitney acquired several thousand acres of unirrigated lands in the vicinity of Goshen, Utah, and claimed to have acquired certain water rights therefor in the Elberta reservoir and in the watershed draining into said reservoir. Whitney then organized the two defendant corporations, in which he owns substantially all of the stock, and over which corporations he exercises control and dominion,

and which are, in short, the alter ego of Whitney himself. He conveyed lands and alleged water rights to these corporations, and used them in selling land, and in making contracts for the sale of land, and in handling the notes, mortgages, and contracts involved therein.

While these things were being done, Whitney conducted a campaign of advertising for himself and for his corporations to sell land. By means of the press, pamphlets, and folders it was represented by defendants to plaintiffs that the two corporations owned 15,000 acres of fertile land and the Elberta reservoir, which they said contained water enough to irrigate 26,000 acres, and they said defendants also owned other water sources in that watershed, making sufficient water to irrigate three times the amount of land owned. It was further represented that a water system to irrigate 10,000 acres of the land in question was complete, and that with little expense it could be extended to serve 15,000 acres; that there was a permanent and abundant supply of water for said lands; that said lands were frostless fruit lands, where smudge pots were not required; that lands purchased would carry full water right, and water would be delivered at the headgate of purchaser; that $2 per acre would be the maintenance charge, etc.; that school conveniences existed; that title to water and land was perfect, etc.

Plaintiffs (and interveners), not knowing the facts· concerning said lands and said project, believed and acted upon said representations, and bought lands and alleged water rights from defendants. It is further alleged that all said representations were false, and were by defendants.known to be false, and were made· by defendants for the purpose of inducing plaintiffs (and interveners) to rely thereon and to buy lands, and that such representations accomplished such purpose. It is further alleged that said defendants did not own said alleged water rights, or any of them; that. the capacity of said reservoir was sufficient for only 1,000 acres, and that practically all the waters in the same and practically all the waters of the said watershed were owned by prior appro-

priators; that the only water available for plaintiffs was an occasional overflow.

Plaintiffs (and interveners) paid from $100 to $300 per acre for their lands. Some paid cash, and some paid in notes and mortgages. They entered upon their respective tracts of land, made improvements, and tried to raise crops. For lack of water they could not farm. The damage sustained by each plaintiff, in difference between value of the land with water and its value without water, improvements made, and crops lost, is set forth.

There are further allegations to the effect that defendants were insolvent and have no property to respond in damages, and that they are trying to dispose of notes and mortgages given by plaintiffs, to plaintiffs' irreparable injury. It is also alleged that defendants have sold more water than they have, and are trying to sell more land and alleged water rights, to the further prejudice of plaintiffs. Prayer for judgment for damages, injunction to prevent further sales of land and water, receivership, and further relief.

Defendants filed a demurrer and an answer to plaintiffs' complaint. The answer is, except as to corporate existence, sales made, etc., a general denial.

After the issues were made up, all parties to the action, through their respective attorneys, entered into two written stipulations, which were duly entitled and filed in the trial court in this cause, wherein (in the first stipulation) they stipulated *"that this action is hereby compromised and settled upon the following terms and in the following manner."* The stipulation provides that a decree of court may be entered establishing the settlement made. All matters, except damage claims, are settled by the stipulations and decree based thereon.

Following this, the stipulations provide that the matter of damage claims shall be submitted to arbitration in the manner provided by the statutes of Utah, and that the court shall make order to that effect. Such an order was made. The litigants selected arbitrators. The arbitrators met, held an inquest lasting thirty-five days, and prepared and filed in court

an award wherein some of the plaintiffs (and interveners) were given damages and some were given nothing. Defendants moved the court to vacate the awards of damages for several reasons set forth in the motion. The court granted the motion, and signed a decree or judgment in which, among other provisions, the awards are set aside, and the plaintiffs and interveners are directed to present their claims for damages to a receiver, who had been appointed over the properties in another action in the trial court. In this same order or decree the court confirms the settlement of other matters made by the stipulations. From the order or decree of court granting the motion to vacate the awards, all the plaintiffs and interveners who deem themselves prejudiced thereby appeal to this court. The defendants and the receiver also appeal from certain parts of this order or decree which confirms the settlement made. Other facts appear in the opinion.

BRAMEL, District Judge (after stating the facts as above).

A first question raised by respondents, which must be considered at the outset, is whether the order of the court below, vacating the award, is or is not appealable. The parties stipulated that the claims of plaintiffs and interveners for damages should by order of court be submitted to arbi-    1, 2 tration, and that such arbitration should be conducted and enforced, in all respects, as provided by chapter 40 of the Compiled Laws of Utah of 1907; and the court made such order. The stipulating parties were all the parties in court. They in the aggregate were the masters of the subject-matter. They had the right to make any lawful disposition of the cause that pleased them best. They had the right to choose any form of proper procedure established by law. Chapter 40 (of Code of Civil Procedure), Compiled Laws 1907, regulates the procedure and declares the effect of arbitration held thereunder. It also provides for the manner in which the district court may, on motion, annul, modify, or correct the award of the arbitrators. When the stipulation and order of court were made, the controversy as to the damage claims ceased to be an ordinary action, as contemplated by the statutes

regulating procedure, and became a special proceeding, or a matter in arbitration, to be governed by the laws applicable thereto.

Section 9 of article 8 of the Constitution of Utah, inter alia, contains this provision:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court."

The Constitution of Utah went into effect January 4, 1896. At this time the statutes of Utah, by specific enumeration, provided for appeals from various orders of the district courts which are not final judgments. For instance, by statutes existing on January 4, 1896, an appeal was given from an order granting or refusing a new trial, from an order granting or dissolving an injunction, from an order dissolving or refusing to dissolve an attachment, and, what is to the point in question, there was a provision in the chapter on Arbitration allowing an appeal from an order of the district court, vacating or modifying an award of arbitrators. The present statutes concerning arbitration are now in all respects substantially the same, and, so far as concerns the right of appeal from an order vacating or modifying an award, are identically the same as they were on August 1, 1884, on which date they were enacted. These provisions, with the exception of one section concerning the attendance of witnesses, were borrowed from California.

In 1896, some months after the Constitution became operative, this court held that the sentence quoted from section 9, article 8, of the Constitution, impliedly denies the right of appeal from all judgments or orders that are not final judgments. *North Point Canal Co.* v. *Utah & S. L. Canal Co.,* 14 Utah, 155, 46 Pac. 824; *Eastman* v. *Gurrey,* 14 Utah, 169, 46 Pac. 828. See, also, *State* v. *Olsen,* 39 Utah, 177, 115 Pac. 968.

In the case of Canal Co. v. Canal Co., supra, the point of decision was that an appeal would not lie from an order granting an injunction pendente lite, because such order is not final; and in the case of Eastman v. Gurrey, the point decided was that an order granting a new trial was not final,

and was not appealable. A statute on the books at that time allowed appeals in each instance. The general principle decided in each of these cases is that the sentence quoted from the Constitution nullified all laws on the statute books allowing an appeal from any judgment or order other than a final judgment.

On January 1, 1898, the statutes of Utah were revised. That revision leaves out of the chapter on Appeals all former statutory provisions concerning which orders are or are not appealable, and inserts in lieu thereof the one sentence:

"From all final judgments of the district courts, there shall be a right of appeal to the Supreme Court."

This provision is in section 3300, Compiled Laws, 1907, which section is identical in language and in idea with the sentence quoted from the Constitution. Comp. Laws 1907, section 3230 (which is not in the chapter on Appeals, but is a part of the chapter on Arbitration), contains these words:

"The decision upon the motion (i. e., motion to vacate, modify, or correct the award) is subject to appeal in the same manner as an order which is subject to appeal in a civil action," etc.

Comp. Laws 1907, section 3228 (a part of the chapter 40 above mentioned), provides:

"The court, on motion, may vacate the award * * * and may order a new hearing before the same arbitrators, or not, in its discretion."

The idea of what constitutes finality in a judgment or order is exemplified and well explained in two cases decided by this court. *Winnovich* v. *Emery*, 33 Utah, 345, 93 Pac. 988; *Bristol* v. *Brent*, 35 Utah, 213, 99 Pac. 1000.

Under the statute quoted, the appealability of an order setting aside an award depends entirely upon the scope and effect of such order. The appellate court may examine the whole record, to determine the nature, scope, and effect of the judgment in question. If the order leaves the issues in the case in such condition that a way to try the same in that particular proceeding is still open, ordinarily the order is not final. But, on the other hand, if the order setting aside the

award fails to provide for a resubmission or other proper method of trial, or by affirmative mandate ends further proceedings in that court or under that particular agreement for arbitration, the order may be final. How, in such a case, could the error of a trial court be reviewed, except by an appeal from the order?

An order of the court setting aside an award and ordering a new hearing might not be a final judgment. But in this particular case the court not only sets aside the award, and not only fails to order a resubmission, but also affirmatively orders the plaintiffs (and interveners) to present their claims for damages to the receiver of the Utah Lake Land, Water & Power Company, who are appointed in another independent action. That was a final disposition of these damage claims, so far as this particular case is concerned. In substance and effect, that order is a judgment releasing two defendants (Whitney and the Orchard Company) from plaintiffs' claims for damage, and putting plaintiffs out of court so far as concerns their damage claims against the third defendant. In my opinion this order is final, and therefore appealable. *Winnovich* v. *Emery,* 33 Utah, 345, 93 Pac. 988.

Appellants appeal from the judgment or order setting aside the award or awards of damages made by the arbitrators to the several plaintiffs and interveners. The errors assigned fall under three heads: (1) Error in entertaining defendants' motion to set aside the awards; (2) error in receiving the evidence taken before the arbitrators; (3) insufficiency of grounds stated in motion and insufficiency of evidence to sustain same. Comp. Laws Utah 1907, section 3228, provides that the court may on motion vacate an award on any of the following grounds:

"1. That it was procured by corruption or fraud or other undue means.

"2. That the arbitrators were guilty of misconduct or committed gross error in refusing, on cause shown, to postpone the hearing, or in refusing to hear pertinent evidence, or otherwise acted improperly, in a manner by which the rights of the party were prejudiced.

"3. That the arbitrators exceeded their powers in making their award; or that they refused or improperly omitted to consider a part of the matters submitted to them; or that the award is indefinite or cannot be performed."

The motion to set aside the award, together with the amendment to said motion, is a lengthy document. It covers sixty-three pages in the printed abstract. Fifteen of the grounds stated in the motion pertain to the award as an entirety. In addition to this, each item of damage awarded to the respective plaintiffs is separately attacked on grounds more or less peculiar thereto. It is not necessary to exhibit this motion in full. A condensed statement of the chief points involved will suffice. The motion states that it will be made upon the pleadings in the case, and upon all the evidence taken before the arbitrators, and upon oral evidence to be introduced at the hearing of such motion.

The motion, in so far as it challenges the validity of the award as an entirety, is based upon alleged misconduct and improper action on the part of the arbitrators in the following respects: (1) In proceeding to hear evidence before any claims were filed with them. The stipulation provides that each plaintiff shall file his itemized claim for damage as a basis for consideration. (2) That the arbitrators acted in the "good old-fashioned way" in an attempt to create a better feeling in the Elberta community. (3) That the arbitrators spent two weeks examining the matter of fraud and fraudulent representations in the sales made to plaintiffs. (4) That they spent two weeks investigating the history of the Elberta project, disputes over water rights, fraudulent advertising, etc., and in so doing received irrelevant evidence and hearsay evidence. (5) That Mr. Shelley, who was acting as attorney for defendants at the hearing, was, on motion of plaintiffs' attorneys, excluded from the hearing. (6) That there was no evidence to support any award of damages. (7) That damages were assessed contrary to law for items for which the law allows no claims. (8) Damages doubly assessed for both loss of crops and alleged depreciation of land. (9) That the arbitrators exceeded their powers. Many more

irregularities involving faulty procedure, incompetent and irrelevant evidence, and allowance of improper charges, are alleged.

When the motion was presented for hearing, the court received the evidence, or some of the evidence, taken before the arbitrators. The abstract refers to a "box full of papers," "four bundles of matter," "loose matter, Exhibits Bx1 to 83, inclusive." What the evidence and all these matters proved or tended to prove to the court below we are very scantily advised by the printed abstract. In colloquies between court and counsel, it appears that evidence taken before the arbitrators was being read to the court. In another place the court, referring to such evidence, says, "I have read it over."

In the certificate to the bill of exceptions it is certified:

"Said foregoing bill, together with the exhibits marked Exhibits ABx, BBx, CBx, CBx1, and Exhibits Bx1 to 83, inclusive, contain all of the matter returned by the arbitrators and considered by the court in this matter, and in connection with the motion for judgment on the awards, and in connection with the motion to set aside said awards."

The printed abstract does not set forth, or purport to set forth, this evidence, or any of it. Under rule 6 of this court (33 Utah, vii, 97 Pac. ix), if any point concerning the sufficiency or insufficiency of evidence is involved in the appeal, appellant must set forth in the printed abstract the full substance of the evidence. Nor does appellants' brief present or argue the evidence. The question of the sufficiency of the evidence to justify the order of the trial court is not before this court. *Vance* v. *Heath*, 42 Utah, 148, 129 Pac. 365; *Laundry* v. *Dole*, 20 Utah, 469, 58 Pac. 1109.

It is clearly stated in the statute above quoted that an award may be set aside for misconduct, fraud, or certain gross errors on the part of the arbitrators. The stipulation reserves to the court the right to pass upon the question as to whether or not, as a matter of law, any damage should be allowed on account of any particular item. The stipulation uses the words:

"Either party may appeal to the court upon the question
whether any damages should be allowed upon account of any
particular item or claim, but not as to the amount of such
damages. The sole question to be considered by the court
shall be one of law, whether any damages should be allowed
on account of any such item. If the court decides that such
item is a proper subject of damage, then the amount allowed
on such item shall be final."

The word "appeal," as here used, does not mean a technical
appeal. The means for a technical appeal from arbitrators
to court is not provided for herein, either by statute or by the
stipulation. The word "appeal," in the stipulation, is used
in a broad and general sense, and merely means a present-
ment of the point reserved to the court by means of the mo-
tion provided for by the statute.

Nor, in looking over the stipulation, can we accede to ap-
pellants' contention to the effect that under any circum-
stances no question save that of the legal competency
of the item or items of damages may be examined by
the court. The stipulation provides for the written pre-
sentment of an itemized claim by each claimant, and for
answer thereto, and for the hearing of evidence on the issue.
The breach of the contract itself, in the nonobservance of any
of these stipulated proceedings to the prejudice of either
party, would clearly be a matter for judicial investigation.
So, also, the law reads into the agreement a covenant to the
effect that the proceeding shall be honest and fair, that the
statement of the items of damages claimed shall be reasonably
specific, that the evidence heard shall possess legal compe-
tency and some probative value, that claims made shall be
legally competent, and that each party shall have a fair and
honest hearing.

It has been held that fraud, bad faith, and prejudicial im-
position will vitiate an award, even though the contract of
submission provides that such award shall be absolute
and conclusive and without appeal. *Payne* v. *Metz*,
14 Tex. 56-58; 5 C. J. 189, 190. However, speaking
generally, it may be said that awards will not be disturbed

on account of irregularities or informalities, or because the court does not agree with the award, so long as the proceeding has been fair and honest and the substantial rights of the parties have been respected. 5 C. J. 179-190.

The defendants had the right to present to the court questions as to gross misconduct, or fraudulent conduct, either actual or constructive, of arbitrators, and the question as to whether any award, or any item in the award, was proper and allowable as a matter of law, and the question of whether the arbitrators exceeded their powers, and the question of whether or not the stipulation had been violated to the prejudice of defendants, and the court had jurisdiction to entertain such matter.   To hold otherwise would be to nullify both statute and stipulation.   Defendants' motion, inter alia, contains the four grounds above mentioned, and the court had jurisdiction to entertain said motion.   It is difficult to see how in an ordinary case, and in this case, the court could, without hearing evidence of some kind, pass judgment upon excess of authority or misconduct of arbitrators, or the legal competency of an award, or of any item in an award.   5 C. J. pp. 240-243, and notes.   In this particular case, each award is substantially in this form, nonessentials omitted:

"We find that defendants failed to furnish in the years 1911 and 1912 all the water that the plaintiff James G. Russel was entitled to, and thereby the plaintiff's trees were damaged in the sum of $400.   We further find that defendants have not had and have not furnished the quantity of water to which James G. Russel was entitled, and his land has depreciated in value, to his damage, in the sum of $600.   We award to James G. Russel $1,000, to be entered as a judgment," etc.

There is some doubt on the face of the award as to the validity of the item for depreciation of land.   Defendants are held in damages for depreciation in the value of land, caused by failure to deliver water which defendants    **8** never had for delivery, and which, presumptively, they had never delivered at any time in the past.   Mr. Russel may have suffered damages to trees and crops, and other damages,

by this failure to deliver water, and his land may be worth less without water than with water, but the name or nature of the loss is not depreciation in the value of land. *Cleary* v. *Shand*, 48 Utah, 640, 161 Pac. 453. To say the least, that part of the award that gives damages for depreciation in value of land is uncertain on its face as to the nature of the loss or losses composing such item. It also appears that there may also be a duplication of damages, in counting loss of trees and depreciation of land as separate items. In my opinion, the court below was justified in making some inquiry, and in hearing evidence, before entering judgment upon these awards.

Appellants insist that, before a court may properly set aside an award on the grounds stated in defendants' motion, the illegality in the award or proceeding must appear upon the face of the award, or at least upon the face of the record, or be exhibited by affidavit. The amendment to the motion to set aside the awards states that the testimony taken before the arbitrators was reduced to writing and was filed in court with the findings and awards, and the same is "hereby referred to and made a part hereof." Comp. Laws Utah 1907, section 3325, provides, among other things, that:

"Testimony to sustain or resist a motion may be in the form of affidavits, or in such other form as the parties may agree on or the court or judge direct."

The objection in the court below to the reception of the evidence taken before the arbitrators was not based upon any defect, or alleged defect, in the certification or identification of the evidence offered. No objection was made as to the form in which it was offered. Had such objections been made, the defects or informalities, if any, in the identification, could have been cured. These defects were waived, because no specific objection thereto was taken at the hearing. *Tietjen* v. *McCoy* (N. M.) 172 Pac. 1042; *American Pub. Co.* v. *Mayne*, 9 Utah, 318, 34 Pac. 247; *Kipros* v. *Railway*, 45 Utah, 389, 146 Pac. 292; 13 Cyc. pp. 1017-1020, and notes; Jones, Evidence (2d Ed.) section 893. The objection made in the court below to the reception of this

evidence was placed upon the broad ground that the court had no jurisdiction to hear the same, and that the act of the court in hearing the same was contrary to the statutes and the stipulation, and that the reading of said evidence was incompetent, immaterial, and improper. From what has been said above, it will be seen that this objection cannot be sustained. The evidence received by the trial court is not before this court for review upon the point as to its probative value.

No reversible error of the trial court in setting aside the award or awards is presented to this court. No appeal is taken from, or exceptions taken to, any other part of the judgment, nor is any particular order or mandate of the court, or any failure to make any particular order, assigned as error. What disposition the court should or should not have made of the damage claims after setting aside the awards is an interesting question, in the light of the stipulation and the rights of the parties involved therein. In view of the state of the record, these matters are not before us for review.

The order setting the awards aside must be affirmed.

Defendants and the receiver also appeal from all the order, or decree, except that part setting aside the awards. They complain of that part of the decree which confirms the settlement made by the stipulations. It is urged that the stipulations, in so far as they compromise or settle the quantity of water the plaintiffs are to have, and the matter of mortgages, etc., are invalid, because the attorneys had no authority to sign them, and that as a necessary consequence the order of the court based on these stipulations is invalid. Special stress is laid upon the challenge to that part of the decree which awards water to plaintiffs Studebaker and Stratton.

So far as the record shows, the receiver had not been appointed at the time the stipulations were signed. The first reference to the receiver is found in the order or decree. He was appointed in another action against these defendants "*after the issues herein were settled as they now appear.*" The quotation (italics ours) is taken from respondents' brief. As before noted, the two stipulations dispose of a part of the

controversy by compromise and settlement, and of another part by a reference to arbitration. All matters pertaining to the amount of water the plaintiffs and interveners were to receive, and practically all matters pertaining to the adjustment of their indebtedness to defendants for lands purchased were compromised and settled by the first stipulation, which provides that the court may enter judgment thereon embodying its provisions. All claims of the plaintiffs and interveners against defendants for damages were referred to arbitration. The part of the order or decree of the court complained of by cross-appellants adopts and confirms the stipulation, in so far as the same compromises and settles the controversy over purchase price and water.

The two stipulations, taken together, form a contract. An attorney in a pending case, because of the nature of his relations to party, court, and subject-matter, and because arbitration is a recognized method of fair and lawful trial, is held by many respectable decisions to have authority, by virtue of his general employment to conduct the case, to submit the matter of arbitration. 6 C. J. 650, 651; 2 Mechem, Agency (2d Ed.) section 2162, and notes. In cases where the act of an attorney in submitting a controversy to arbitration is not promptly repudiated by his client, it is very generally, if not universally, held that the act of the attorney, even if not valid at the outset, is made valid by the acquiescence of his client. *Connett* v. *City*, 114 Ill. 233, 29 N. E. 280; *Smith* v. *Morse*, 9 Wall. (U. S.) 76, 19 L. Ed. 597.

It is contended in this case, however, that the stipulation, in so far as it adjusts property rights and consents to a judgment in accordance with such adjustment, is more than an agreement to arbitrate, and is a compromise and settlement, and as such is beyond the implied authority of an attorney to make. It may be conceded that an attorney, acting under nothing more than a general authority to conduct a case, has no power to compromise the same. *Trope* v. *Kerns*, 83 Cal. 553, 23 Pac. 691. But the act of an attorney in excess of his authority, like the act of any other agent in excess of authority, may be either ratified or repudiated by the principal.

In fact, the law seems to require some promptness on the part of a client in repudiating an unauthorized settlement made by his attorney, to avoid being bound thereby. *Black* v. *Rogers,* 75 Mo. 441; *Trust Co.* v. *MacLaire,* 77 Misc. Rep. 116, 135 N. Y. Supp. 1022; 2 Mechem, Agency (2d Ed.) section 2187. It has been held that while an attorney has no implied authority to compromise his client's case, still, if he has done so, it will be presumed that he acted with the client's consent, until the contrary is shown. *Railroad Co.* v. *Scott,* 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758; *Trope* v. *Kerns,* 83 Cal. 553, 23 Pac. 691.

In this particular case it seems that more than two years elapsed between the time the stipulations were signed and the time when doubts arose in the mind of the attorney for the receiver as to the authority of the attorneys to sign the same. Meanwhile the attorneys, the arbitrators, the court, and all parties were proceeding and acting under these stipulations in a manner that suggests an honest belief on their part to the effect that the stipulations were valid. One of the grounds upon which the court was asked to set aside the awards is that Mr. Shelley, attorney for defendants, was excluded from the hearing held by the arbitrators, and defendants were thereby deprived of the benefits of his knowledge and service in presenting their case. The answers of defendants filed with the arbitrators were verified by Mr. Whitney. In some instances he verifies them individually, and in some instances as president of and in behalf of defendant corporations. From this we must infer that defendants had seasonable knowledge of the arbitration and of the whole agreement upon which it was founded. The amendment to the motion to set aside the awards, which amendment was filed nearly two years—twenty-two months—prior to the first suggestion of lack of authority on the part of attorneys to sign the stipulations, recites that the parties, through their attorneys, entered into the stipulation. The point as to the authority of the attorneys to sign the stipulation was not raised at the time the awards were set·aside, nor at any time prior to the hearing of a motion to amend the proposed bill of exceptions. This motion to amend

among other things, requests the court to strike from the bill a recital to the effect that the parties had entered into the stipulation and insert in lieu thereof a statement to the effect that a stipulation was filed. Upon these facts, I am of the opinion that, even if the attorneys for defendants had no authority to sign the stipulations in the beginning; the acts of the attorneys were not only ratified by the passive acquiescence of their clients, but were also affirmatively adopted and acted upon by their clients.

It is next argued by cross-appellants that the stipulation was or is abrogated by operation of law. It is contended that the stipulation contemplated the settlement of the entire controversy, and not merely a portion of it; ergo, there should be no judgment thereon until the claims have been arbitrated. The stipulation covers two proceedings: (1) Settlement of differences as to water rights, mortgages, etc.; and (2) arbitration of damage claims. The two proceedings are not wholly severable under the terms of the stipulation. The stipulation provides that the plaintiffs shall renew their notes and mortgages to defendants, and shall deposit the said renewed documents with Gen. Wedgewood, who shall hold the same until the damage claims have been disposed of by arbitration, as provided in the stipulation, and upon damages being found for any plaintiff he shall indorse and credit the same on the note of such plaintiff as of date March 1, 1915. The contention to the effect that the stipulation embraced the whole controversy is well founded, but it is immaterial.

In making this stipulation the parties contemplated all the delays, vicissitudes, and uncertainties that ordinarily attend the kind of a proceeding they adopted, as well as those which might develop therein. They assuredly did contemplate awards that might be vulnerable to attack in court. The reservation in the stipulation of a right to appeal to the court spells out this fact. The awards were set aside on defendants' own motion. The act of defendants brought about the situation which defendants (cross-appellants) now assert ended the stipulations as a matter of law. I cannot accede to the proposition that the parties or any

party to the stipulation contemplated or contracted with reference to any foreseen or certain and definite action on the part of the arbitrators, or on the part of the court following the decision of the arbitrators. The nature of the contract and of the subject-matter forbids such a theory. When the parties agreed to start these damage claims upon the way to some doubtful destiny, they also agreed to wait for the ultimate determination of what that destiny should be. If any plaintiff obtains an award for damages from the arbitration, or through any lawful continuation of that proceeding in any court competent to try or review the matter, that judgment or award is a thing contemplated by the stipulation. Under the stipulation Gen. Wedgewood is to hold the notes and mortgages "until the damage claims of the respective plaintiffs have been disposed of as provided in paragraph 2." Paragraph 2 provides for the arbitration. As I have said, this contemplates, not only the arbitration proceeding from stipulation to award, but also all reviews and continuations thereof provided for by law or by the stipulation. The law existing at the time a contract is made is always held to be a part of such contract. Bishop, Contracts, section 565.

If there was any error in the order of the court, it consisted in directing the plaintiffs to present their damage claims to the receiver. But cross-appellants do not complain of this particular order. If there was any order or act of the court that deprived the parties of any benefit or proceeding within the scope of their stipulation, it was the order directing plaintiffs to present their claims to the receiver. Such an order may not have been within contemplation of the parties at the time they made their contract, nor is such a proceeding mentioned in the statutes on arbitration. Neither party assigns error or makes any point as to this part of the judgment. As the matter now stands, this part of the order seems to be in favor of cross-appellants and somewhat prejudicial to appellants. We are powerless to review this particular order. I am of the opinion that the stipulation was not and is not abrogated by operation of law, and that the trial court had power and jurisdiction thereunder to

620        SUPREME COURT OF UTAH.        [Aug.

Bivans et al. v. Utah Land, Water & Power Co. et al., 53 Utah 601.

make the decree therein provided for, with such necessary changes as to dates, names, etc., delinquent installments, custody of securities, etc., as the equities of the situation then existing required.

It is next contended that the court erred in making decree to the effect that defendants Stratton and Studebaker were each entitled to two and one-half acre feet of water for their respective parcels of land. The stipulation names about twenty parties, describes the parcel of land owned by each, and provides that each of said parties shall have two and one-half acre feet of water each season for irrigating such parcel. The stipulation further provides that these water rights are made appurtenant to these lands by deeds of conveyance. Stratton and Studebaker are mentioned in this list of names, and their lands are therein described. In a subsequent paragraph the stipulation provides that at the time of hearing before the arbitrators Stratton and Studebaker may offer evidence, "as they may respectively be advised," and "in support of their contention" that the water rights to be awarded them in the decree, "not only are no concession on the part of defendants, but that they are less than said plaintiffs respectively are entitled to." It seems from the above that Stratton and Studebaker were claimants of more water than the stipulation allowed them, and that they were given opportunity by the stipulation to offer evidence as to such excess. The decree follows the stipulation and awards them the amount of water therein agreed. If the stipulation is valid, and I hold that it is, the decree as to these water rights is valid.

No reversible error in the judgment of the lower court has been exhibited to this court. Judgment affirmed on both appeals. Respondents awarded costs on appellants' appeal. Appellants awarded costs on respondents' cross-appeal.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur. THURMAN, J., being disqualified, did not participate.